1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   STEVE MARTINEZ,                          No. CIV S-08-0674-LKK-CMK-P

12            Plaintiff,

13        vs.                                 FINDINGS AND RECOMMENDATIONS

14   JOHN ZIOMEK, et al.,

15            Defendants.

16   _____/

17            Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18   to 42 U.S.C. § 1983.  Pending before the court is Defendants' motion to dismiss (Doc. 30).

19   Plaintiff filed an opposition to the motion (Doc. 33) and Defendants filed a reply (Doc. 34).

20        **A.    BACKGROUND**

21            Plaintiff filed his original complaint on March 31, 2008, claiming he was being

22   denied reasonable medical treatment and/or accommodations for his disability arising from an

23   ankle injury.  Upon screening the complaint, the court found the complaint sufficiently stated a

24   claim against four defendants, Ziomeck, Williams, Smith and Hashimoto, but failed to state a

25   claim against two other defendants, Todd and Martel (Doc. 11).  Plaintiff was provided an

26   opportunity to file an amended complaint to cure the defects noted, but failed to do so within the

1

1   time provided.  The court then authorized service upon the four defendants (Ziomeck, Williams,

2   Smith and Hashimoto), and dismissed the other two (Todd and Martel) (Docs. 12, 13, 20).[1]

3              Following service of the complaint, defendants Ziomek, Williams, Smith and

4   Hashimoto filed a motion to dismiss (Doc. 22).  Instead of an opposition to that motion, Plaintiff

5   filed an amended complaint[2] (Doc. 29).  Before the court screened the amended complaint, the

6   defendants filed a new motion to dismiss (Doc. 30).  That motion has now been fully briefed and

7   submitted on the merits.

8              **B.    MOTION TO DISMISS**

9              In considering a motion to dismiss, the court must accept all allegations of

10  material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

11  court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

12  v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

13  738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

14  ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

15  395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

16  factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50

17  (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by

18  lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

19             Rule 8(a)(2) requires only "a short and plain statement of the claim showing that

20  the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is

21  and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007)

22  (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for

23

24       [1]    Plaintiff did not file objections to the Findings and Recommendations which
    recommended the dismissal of defendants Todd and Martel.

25

26       [2]    The amended complaint attempts revive his claims against Todd, but appears to
    have abandoned any claim Plaintiff was attempting to assert against Martel.

1  failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic

2  recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

3  raise a right to relief above the speculative level." Id. at 555-56.  The complaint must contain

4  "enough facts to state a claim to relief that is plausible on its face." Id.  at 570.  "A claim has

5  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

6  reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at

7  1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

8  than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.

9  at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

10  it 'stops short of the line between possibility and plausibility for entitlement to relief." Id.

11  (quoting Twombly, 550 U.S. at 557).

12          In deciding a Rule 12(b)(6) motion, the court generally may not consider materials

13  outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

14  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1)

15  documents whose contents are alleged in or attached to the complaint and whose authenticity no

16  party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

17  and upon which the complaint necessarily relies, but which are not attached to the complaint, see

18  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

19  of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

20  1994).

21          A motion to dismiss based on a prisoner's failure to exhaust administrative

22  remedies is properly the subject of an unenumerated motion under Federal Rule of Civil

23  Procedure 12(b).  See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "In deciding a

24  motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the

25  pleadings and decide disputed issues of fact." Id. at 1119-20.  Where the court looks beyond the

26  pleadings to a factual record in deciding the motion to dismiss, which is "a procedure closely

1   analogous to summary judgment," the court must assure that the plaintiff has fair notice of his

2   opportunity to develop a record. Id. at 1120 n.14 (referencing the notice requirements outlined in

3   Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d

4   409 (9th Cir. 1988). Defendants bear the burden of establishing that the plaintiff failed to

5   exhaust administrative remedies prior to filing suit. See Wyatt, 315 F.3d at 1120. If the court

6   concludes that administrative remedies have not been exhausted, the unexhausted claim should

7   be dismissed without prejudice. See id. at 1120; see also Jones v. Bock, 549 U.S. 199 (2007).

8           Here, Defendants bring the motion to dismiss on the grounds that Plaintiff failed

9   to exhaust his administrative remedies as to his wrist, and as to his ankle prior to November 10,

10  2005. In addition, they argue Plaintiff fails to state a claim against defendant Smith.

11          1.      Failure to Exhaust

12          Prisoners seeking relief under § 1983 must exhaust all available administrative

13  remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory

14  regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling

15  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of

16  the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

17  while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The

18  Supreme Court recently addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199

19  (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in

20  the complaint because lack of exhaustion is an affirmative defense which must be pleaded and

21  proved by the defendants; (2) an individual named as a defendant does not necessarily need to be

22  named in the grievance process for exhaustion to be considered adequate because the applicable

23  procedural rules that a prisoner must follow are defined by the particular grievance process, not

24  by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some,

25  but not all, claims are unexhausted.

26  / / /

4

1        The Supreme Court also held in Woodford v. Ngo that, in order to exhaust

2   administrative remedies, the prisoner must comply with all of the prison system's procedural

3   rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).   Thus,

4   exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90.

5   Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance

6   which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id.

7   at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the

8   quantity of prisoner suits "because some prisoners are successful in the administrative process,

9   and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

10        A prison inmate in California satisfies the administrative exhaustion requirement

11   by following the procedures set forth in §§ 3084.1-3084.7 of Title 15 of the California Code of

12   Regulations.  In California, inmates "may appeal any departmental decision, action, condition, or

13   policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code

14   Regs. Title 15, § 3084.1(a).  These regulations require the prisoner to proceed through several

15   levels of appeal:  (1) informal resolution; (2) formal appeal; (3) second level appeal to institution

16   head; (4) third level appeal to the director of the California Department of Corrections and

17   Rehabilitation.  A decision at the third formal level, which is also referred to as the director's

18   level, is not appealable and concludes a prisoner's departmental administrative remedy.  See Cal.

19   Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2).  Departmental appeals coordinators may

20   summarily reject a prisoner's untimely administrative appeal.  See Cal. Code Regs. tit. 15, §§

21   3084.3(c)(6) and 3084.6(c).   If a group of inmates intend to appeal the same decision or action,

22   one grievance form is used and a list of the participating inmates must be attached.  The list must

23   be legible and state the inmates' names, departmental identification numbers, and housing

24   assignment.  The form must also be signed by all participating inmates.  Currently, California

25   regulations do not contain any provision specifying who must be named in the grievance.

26   ///

1            In certain circumstances, the regulations make it impossible for the inmate to

2 pursue a grievance through the entire grievance process.  See Brown v. Valoff, 422 F.3d 926, 939

3 n. 11 (9th Cir. 2005).  Where a claim contained in an inmate's grievance is characterized by

4 prison officials as a "staff complaint" and processed through a separate confidential process,

5 prison officials lose any authority to act on the subject of the grievance.  See id. at 937 (citing

6 Booth, 532 U.S. at 736 n. 4).  Thus, the claim is exhausted when it is characterized as a "staff

7 complaint."  See id. at 940.  If there are separate claims in the same grievance for which further

8 administrative review could provide relief, prison regulations require that the prisoner be notified

9 that such claims must be appealed separately.  See id. at 939.  The court may presume that the

10 absence of such a notice indicates that the grievance did not present any claims which could be

11 appealed separate from the confidential "staff complaint" process.  See id.

12            Here, Defendants argue Plaintiff failed to exhaust his administrative remedies

13 regarding his ankle claims prior to November 10, 2005,[3] as well as his claims regarding his wrist.

14 In support of this argument, they have provided the court with copies of Plaintiff's inmate

15 grievances, and declarations from prison officials who are responsible for the handling of inmate

16 grievances.  Defendants argue that the only grievance Plaintiff completely exhausted was

17 grievance No. MCSP-B-05-02272, which Plaintiff attached to his complaint.  This grievance was

18 originally submitted to the first level on January 17, 2006.  In the grievance, Plaintiff complained

19 that he was examined by defendant Hashimoto on December 13, 2005, who determined he was

20 not mobility impaired.  He then outlined his medical history, dating back to April 2002, in

21 support of his argument that he needed an ankle brace, lower bunk and soft shoes.  Unsatisfied

22 with the responses he received at the lower levels, Plaintiff appealed the lower decisions to the

23

24      [3]    Defendants originally argued Plaintiff failed to exhaust his ankle claims prior to
November 10, 2005 and after March 2, 2006.  In their reply, they acknowledge his claims against
defendant Ziomek regarding improper treatment and denial of accommodations are exhausted, up

25 to March 2008.  However, just prior to initiating this lawsuit, Plaintiff filed another grievance on
March 10, 2008, which was not exhausted prior to filing this case, and the claims addressed

26 therein are therefore unexhausted.

1   third, or Director's level.  In his third level appeal, Plaintiff specifically states that the second

2   level "Reviewer mentions CT Scan (wrist), C.C.P. (Chronic Care Patient), follow-up visits and

3   other medical issues addressed by Dr. Hashimoto that are not being raised in this appeal at this

4   time." (First Am. Comp., Doc. 29, Ex. A, at 64).  He then continues to assert that his

5   accommodation requests for lower bunk chronos, ankle braces and soft shoes should have been

6   granted.  This grievance was denied at the third level on March 27, 2006.

7           Defendants argue that the grievance procedures require inmates to file a grievance

8   within fifteen-working days of any adverse action taken.  See Cal. Code Regs. tit. 15, §

9   3084.6(c).  Since the only inmate grievance Plaintiff submitted regarding his medical treatment

10  was signed on January 17, 2006, and complained about a specific incident which occurred on

11  December 13, 2005, any claim he had prior to that for which he failed to file a grievance, remains

12  unexhausted because he failed to follow the proper procedure for filing an inmate grievance.[4]

13  Defendants therefore argue that because it is required for inmates to follow the proper procedure

14  for exhaustion, and Plaintiff failed to do so for any claim he had prior to the December 6, 2005,

15  accommodations request, those claims are unexhausted.

16          The undersigned agrees with Defendants' argument.  The California regulations

17  require inmates to file their grievance within fifteen days of the adverse action or treatment they

18  are complaining about.  This provides the prison an opportunity to take corrective action if it is

19  deemed necessary.  Failure to raise an issue in a timely manner fails to provide the prison with

20  that opportunity.

21          Plaintiff provides no evidence or argument that any of his claims prior to

22  November 10, 2005, are exhausted.  He points to the one inmate grievance he filed, Log. No.

23  MCSP-B-05-02272, and argues he complained of actions between April 2002 and December

24  _____

25      [4]   Defendants assert that Plaintiff's claims prior to November 10, 2005, are
    unexhausted for failure to file an inmate grievance.  It appears that date is calculated based on
    Plaintiff's original request for accommodation, which was submitted on December 6, 2005
26  (identifying a problem with his ankles).

1   2005, regarding both his ankles and left wrist.  However, the undersigned does not read that

2   inmate grievance to include any complaint of his treatment between April 2002 and December

3   2005.  Rather the grievance sets forth a history of Plaintiff's medical treatment where he was

4   granted accommodations and, as stated above, specifically states he is not complaining about his

5   wrist.  Even if the grievance could be read broadly enough to find that he did complain about his

6   medical treatment back to April 2002, Plaintiff does not address the timeliness issue.  He simply

7   argues that the reviewer did not mention any defect or timeliness issue in the decisions.

8   However, that argument does not address the issue because the grievance was timely for the

9   specific incident he was complaining about, arising in December 2005.

10          Therefore, the undersigned finds any claims regarding Plaintiff's medical

11   treatment and/or accommodations prior to November 10, 2005, are unexhausted and should be

12   dismissed.  Similarly, the claims Plaintiff has regarding the medical treatment in March 2008, for

13   which he filed a separate grievance, are unexhausted and should be dismissed.

14          Finally, the undersigned finds Plaintiff never filed a grievance regarding the

15   treatment of his wrist, and those claims are unexhausted.  His argument that those claims were

16   included in his December 2005 exhausted grievance is contradicted by his own statements

17   contained therein.  He does not argue that he filed any other inmate grievance regarding the

18   treatment for his wrists, and Defendants have provided the court with evidence that no such

19   grievance was filed.  Raising the issue with a treating physician is insufficient to exhaust

20   administrative remedies.  Plaintiff also makes some conclusory statements in his amended

21   complaint that he filed some inmate grievances for which he received no response.  However,

22   other than a March 10, 2008, grievance (which Defendants have acknowledged), Plaintiff offers

23   no specific information on any other inmate grievance he has filed.  He does not provide the

24   court with dates these other grievances were filed, with information as to what he was

25   complaining of in these other grievances, or any other information regarding them.  The

26   undersigned cannot find Plaintiff's vague statements regarding a "couple" of other grievances

1    sufficient to show he attempted to, but was prevented from, exhausting his claims regarding the

2    treatment of his wrist.

3            Plaintiff's claims in the amended complaint which meet both the date requirement

4    and injury requirement, as discussed above, are limited.  Those claims which arose between

5    November 11, 2005 and March 2008, involving Plaintiff ankle not wrist, are stated against

6    defendants Hashimoto, Smith and Ziomek.  There are no claims against defendant Williams that

7    meet both of these requirements.  Most of the claims against defendant Williams arise in relation

8    to the treatment of Plaintiff's wrists, which the undersigned found unexhausted.  The

9    undersigned will therefore recommend defendant Williams be dismissed from this action.

10            2.    Failure to State a Claim

11            Defendants also argue that Plaintiff's complaint fails to state a claim against

12   defendant Smith.  They submit that the only claims against defendant Smith are related to his

13   review of other doctors' decisions, as a supervising physician, not based on his own personal

14   actions, or arise from denying Plaintiff's inmate grievance.  Plaintiff counters that defendant

15   Smith's review of the other doctors' decisions are his own personal actions and subject him to

16   liability.

17            Reviewing the amended complaint, Plaintiff's only claim against defendant Smith

18   is in regards to his approval of defendant Hashimoto's denial of his lower bunk request.  (See

19   First Am. Compl., Doc. 29 at 12).  This is the only claim against defendant Smith that occurs

20   within the appropriate time frame and in regards to Plaintiff's ankle, as discussed above.  It is

21   unclear to the court whether defendant Smith's approval of defendant Hashimoto's decision was

22   pursuant to a supervisory review of that decision or through an inmate appeal.  Plaintiff points to

23   his December 6, 2005, Reasonable Modification or Accommodation Request, as attached at

24   exhibit A of his amended complaint, for support of this claim.  (See First Am. Comp., Doc. 29 at

25   45-46).  It therefore appears that defendant Smith's roll in this decision was solely as a

26   supervisor.  There is nothing in Plaintiff's amended complaint the court could construe as

1    alleging defendant Smith was directly involved in that decision as a treating physician.

2              Supervisory personnel are generally not liable under § 1983 for the actions of their

3    employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

4    respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

5    violations of subordinates if the supervisor participated in or directed the violations.  See id.  The

6    Supreme Court has rejected the notion that a supervisory defendant can be liable based on

7    knowledge and acquiescence in a subordinate's unconstitutional conduct because government

8    officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct

9    and not the conduct of others.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  When a

10   defendant holds a supervisory position, the causal link between such defendant and the claimed

11   constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

12   (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

13   allegations concerning the involvement of supervisory personnel in civil rights violations are not

14   sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must

15   plead that each Government-official defendant, through the official's own individual actions, has

16   violated the constitution."  Iqbal, 129 S. Ct. at 1948.

17             As a defendant can only be held liable for his own actions, not those of a

18   subordinate, Plaintiff's claim against defendant Smith is insufficient.  At best Plaintiff's

19   allegations against defendant Smith are based on his knowledge and acquiescence in a

20   subordinate's decision.  Such allegations are not enough to impose liability.  In addition, to the

21   extent defendant Smith's action were in relation to a denial of Plaintiff's inmate grievance, such

22   allegations would similarly be insufficient.

23             Prisoners have no stand-alone due process rights related to the administrative

24   grievance process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v.

25   Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling

26   inmates to a specific grievance process).  Because there is no right to any particular grievance

1    process, it is impossible for due process to have been violated by ignoring or failing to properly

2    process grievances.   Numerous district courts in this circuit have reached the same conclusion.

3    See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly

4    process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863

5    (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address

6    grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL

7    29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process

8    a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967

9    (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function

10   properly failed to state a claim under § 1983).  Prisoners do, however, retain a First Amendment

11   right to petition the government through the prison grievance process.  See Bradley v. Hall, 64

12   F.3d 1276, 1279 (9th Cir. 1995).  Therefore, interference with the grievance process may, in

13   certain circumstances, implicate the First Amendment.

14          The undersigned therefore concludes the allegations against defendant Smith are

15   insufficient, and defendant Smith should be dismissed from this action.

16          **C.      SCREENING**

17          Plaintiff filed his amended complaint in response to Defendants' motion to

18   dismiss his original complaint.  Prior to the court screening the amended complaint, Defendants

19   filed the instant motion to dismiss.  The court, however, is still required to screen the complaint

20   as it is brought by a prisoner seeking relief against a governmental entity or officer or employee

21   of a governmental entity.  See 28 U.S.C. § 1915A(a).

22          The court screened Plaintiff's original complaint and found his claims against

23   Todd and Martel insufficient.  The court explained to Plaintiff what was required to state a

24   deliberate indifference claim, and what was lacking in his claim against defendants Todd and

25   Martel.  In regards to defendant Todd, the undersigned explained:

26   / / /

1    The only mention of defendant Todd is in regards to a bone scan
referral from June 19, 2007, and a denial of "DNM status"
2    (indicating some kind of mobility impairment). (Complaint at 11-
12). However, plaintiff does not explain what "DNM status" is or
3    why he needed such designation. He also does not explain how
defendant Todd acted with deliberate indifference to a serious
4    medical need simply by denying him DNM status, including what
defendant Todd knew of his medical condition necessitating such
5    designation.

6    (Doc. 11 at 5). The court then provided Plaintiff an opportunity to file an amended complaint,

7    which he did not do within the time provided.[5] As no amended complaint was filed, the

8    undersigned recommended defendants Todd and Martel be dismissed from this action (Doc. 13).

9    Plaintiff was provided an opportunity to file objections to that recommendation, but failed to do

10   so. The court then adopted the undersigned's recommendation and dismissed defendants Todd

11   and Martel (Doc. 20).

12          Plaintiff is now attempting to bring defendant Todd back into the case as a

13   defendant. Plaintiff was provided an opportunity to file an amended complaint and keep Todd in

14   this action as a defendant. He failed to avail himself of that opportunity, and defendant Todd was

15   dismissed from this action. Therefore, notwithstanding that Plaintiff attempts to name Todd as a

16   defendant in his amended complaint, Todd has been dismissed and should no longer be a

17   defendant to this action.

18          **D.   CONCLUSION**

19          Based on the foregoing, the undersigned recommends that:

20          1.      Defendants' motion to dismiss (Doc. 30) be granted;

21          2.      Defendants Williams and Smith be dismissed from this action for failure

22   to state a claim;

23          3.      Plaintiff's claims be limited to those regarding his ankle which arose

24   between November 11, 2005, and March 2008;

25

26      [5]     The undersigned also explained that Plaintiff failed to allege any facts relating to
defendant Martel. Plaintiff's amended complaint does not name Martel as a defendant.

12

1    4.    The dismissal of defendant Todd be confirmed;

2    5.    This action should proceed against defendants Hashimoto and Ziomek

3  only;

4    6.    Defendants' motion to dismiss the original complaint (Doc. 22) be denied

5  as moot; and

6    7.    Defendants Hashimoto and Ziomek be directed to file an answer within 20

7  days of the order adopting these recommendations.

8    These findings and recommendations are submitted to the United States District

9  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

10  after being served with these findings and recommendations, any party may file written

11  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

12  Findings and Recommendations."  Failure to file objections within the specified time may waive

13  the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14

15   DATED: March 3, 2010

16

17                    CRAIG M. KELLISON
                      UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

13